[Cite as *State v. Kelley*, 2011-Ohio-3545.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

STATE OF OHIO,                          :

    Plaintiff-Appellee,                 :      Case No.   10CA3182

    vs.                                 :

MICHAEL KELLEY, II,          :      DECISION AND JUDGMENT ENTRY
    Defendant-Appellant.                :

_____

APPEARANCES:

COUNSEL FOR APPELLANT:      Lori J. Rankin, 2 West Fourth Street, Chillicothe, Ohio
                           45601

COUNSEL FOR APPELLEE:[1]    Matthew Schmidt, Ross County Prosecuting Attorney, and
                           Jeffrey C. Marks, Ross County Assistant Prosecuting
                           Attorney, 72 North Paint Street, Chillicothe, Ohio 45601

_____

CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED: 7-14-11

ABELE, J.

{¶ 1}   This is an appeal from a Ross County Common Pleas Court judgment of

conviction and sentence.   The trial court found Michael Kelley, II, defendant below and appellee

herein, guilty of possession of cocaine and sentenced him to serve five years in prison.

{¶ 2}   Appellant raises the following assignment of error for review:

"THE TRIAL COURT ERRED IN OVERRULING THE
DEFENDANT-APPELLANT'S MOTION TO SUPPRESS [THE]
EVIDENCE IN VIOLATION OF THE
DEFENDANT-APPELLANT'S RIGHTS UNDER THE FOURTH
AMENDMENT TO THE UNITED STATES CONSTITUTION
AND ARTICLE ONE, SECTION TEN OF THE OHIO

_____

[1]Michael M. Ater, former Ross County Prosecuting Attorney, now serves as a Ross County Common Pleas judge.

CONSTITUTION."

**{¶ 3}** On June 11, 2009, Major Crimes Task Force Detectives Goble and Wallace received information from two confidential informants that appellant would be traveling on State Route 104 from Chillicothe to Columbus in a black Chevy pick-up truck in order to obtain a large amount of crack cocaine.2 The detectives then set up surveillance on Route 104 and subsequently observed the vehicle that the informant had described. The detectives then requested a cruiser to stop the vehicle.

**{¶ 4}** Officer Campbell spoke with the two detectives over his cellphone and learned that the detectives suspected that the vehicle contained illegal drugs. After Officer Campbell followed the vehicle and noted that he could not read the license plate, he stopped the vehicle. The two detectives also arrived on the scene, and a canine officer arrived within minutes.

**{¶ 5}** The canine officer walked the dog around the vehicle, and the dog alerted on the passenger side. Officer Campbell then requested appellant to exit the vehicle. Officer Campbell stated that as appellant exited the vehicle, he noticed a piece of tissue paper sticking out of the back side of appellant's waistband. He further observed that appellant appeared "tense, stiff and nervous" and that he walked "[k]ind of tight, stiff." The officer stated that he asked appellant to "put his hands up on the truck, spread his legs, began checking his pockets, legs, his whole body for any contraband or any articles that need identified." Officer Campbell stated that when he checked "between [appellant's] butt cheeks [he] felt a large bulge, between his cheeks." The officer stated that the bulge "felt somewhat smaller than [a] golf ball" and that

---

[2] We have derived the facts from the testimony presented at the motion to suppress hearing and the information contained in the search warrant affidavit, which was admitted at the motion hearing.

"it was hard but not completely stiff."   Officer Campbell explained that after he felt the bulge, appellant "tightened up his butt cheeks to where I could no longer feel it."   The officer stated that he "continued telling him to relax, trying to check the area again[, but appellant] continued to keep his butt cheeks tight to where I could no longer feel the object."

{¶ 6}   Officer Campbell stated that he limited his search of appellant to the exterior of appellant's clothing, but candidly admitted that he was searching for contraband, not simply a weapon.   The officer further stated that during his search, he felt inside appellant's pockets and that he "press[ed] his fingers into an area where [appellant's] anus would be located."

{¶ 7}   Detective Goble then asked appellant what he had in his anal cavity and groin area.   Appellant denied that he was trying to hide anything.   Officer Campbell continued to attempt to get appellant to relax so that he could determine the nature of the object, but appellant would not relax.   Detective Goble then applied for, and received, a warrant to search appellant's person.

{¶ 8}   Detective Goble's search warrant affidavit described the basis for the officers' suspicion that drugs would be in the vehicle.   The detective stated that the two CIs

> "advised that there is a black male from Columbus who goes by the name of 'big boy' selling large amounts of crack cocaine in Chillicothe.   Both informants advised that 'big boy' is a large black male and usually wears his hair in braids or cornrows.   Both informants also advised there is always a smaller black male with short hair who is always with 'big boy' also selling crack cocaine in Chillicothe.   CI #2 advised that he/she has personally observed both 'big boy' and the other black male keep large amounts of crack cocaine down there [sic] pants in their anal cavity and groin area.   CI #2 also advised that the smaller black male often carries a firearm and CI #2 has seen him with the firearm on numerous occasions.
>      CI #1 has provided detectives with information in the past that has proven reliable and has purchased crack cocaine for detectives in a controlled setting on at least four occasions.

CI #2 has provided detectives with information in the past that has proven reliable and has purchased crack cocaine for detectives in a controlled setting at least once.   CI #2 also has provided information that has led to a search warrant with drugs and paraphernalia being seized and persons arrested on drug charges.

On 6/11/09 detectives were contacted by CI #2 who advised that 'big boy' and the other black male who is always with 'big boy' were on there [sic] way to Columbus[,] Ohio to pick up a load of crack cocaine.   The informant advised that they were in a black full size pick up truck with the number 41 written on the back window with white paint.   The informant further advised that Clark Graves was driving them to Columbus to get the crack cocaine.   CI #2 advised that he/she believes that they travel State Route 104 to and from Columbus.

Detectives set up surveillance on State Route 104 and at approximately 1:45 pm detectives observed * * * a black Chevy truck * * * traveling s/b on State Route 104 at Fairgrounds Rd.   The truck is registered to Clark Graves. Detectives observed that there were three subjects in the vehicle and the number 41 was written on the back glass of the vehicle with white paint.
                    * * * *
Upon stopping the vehicle detectives identified Clark Graves as the driver and the two passengers were Michael P. Kelley II (large black male with corn rows) and Khyle Thomas (smaller black male with short haircut).   Ofc. Cyn Judd of the Chillicothe Police Department was requested at the scene to walk his canine around the vehicle. * * * The canine alerted to the passenger side of the vehicle for the presence of illegal drugs.

Each subject was asked to exit the vehicle individually.   Detectives observed that Michael P. Kelley II, who was the first to exit the vehicle, had his pants and boxer shorts down and were down past his butt. [Detective Goble] also observed that he had what appeared to be toilet paper sticking out his pants. Kelley was extremely nervous and when [Detective Goble] talked to him observed that he was shaking.

The second subject to exit the vehicle was Khyle Thomas.   This detective also observed that he had a piece of toilet paper sticking out of his pocket. * * *."

**{¶ 9}**   A search of appellant's person led to an indictment that charged appellant with

second-degree felony possession of crack cocaine in violation of R.C. 2925.11.   Later, appellant

filed a motion to suppress evidence and argued that: (1) the officer's search exceeded the scope

of a weapons patdown search; and (2) the officer did not have probable cause to search him.

The appellee argued, however, that the dog's alert on the vehicle provided the officer with

probable cause to search appellant.

{¶ 10} The trial court overruled appellant's motion and determined that the dog's alert provided the officer with probable cause to search appellant. Alternatively, the court determined that the facts contained in the search warrant affidavit (i.e., the facts that led to Officer Campbell's search) provided probable cause to search appellant.

{¶ 11} Subsequently, appellant entered a no contest plea. The trial court accepted appellant's plea and sentenced him to serve a mandatory five year prison term. This appeal followed.

{¶ 12} In his sole assignment of error, appellant argues that the trial court erred by overruling his motion to suppress evidence. In particular, appellant contends that (1) the law enforcement officer lacked probable cause to search his person; (2) the dog's alert on the vehicle did not provide the probable cause necessary to search his person; and (3) even if Officer Campbell possessed probable cause to search, the appellee failed to present any evidence concerning an exception to the warrant requirement.

{¶ 13} Generally, the appellee argues that (1) the officer did not conduct a full-scale search of appellant, but, instead, simply conducted a limited patdown search for weapons; and (2) the dog's alert on the vehicle provided the officer with probable cause to conduct any search of appellant that may have occurred.

A

STANDARD OF REVIEW

{¶ 14} Initially, we note that appellate review of a trial court's decision regarding a motion to suppress evidence involves mixed questions of law and fact. See State v. Long (1998), 127 Ohio App.3d 328, 332, 713 N.E.2d 1. When ruling on a motion to suppress

evidence, a trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the witness credibility. See State v. Fanning (1982), 1 Ohio St.3d 19, 20, 437 N.E.2d 583; State v. Dunlap (1995), 73 Ohio St.3d 308, 314, 652 N.E.2d 988. Accordingly, a reviewing court must defer to a trial court's findings of fact if competent, credible evidence exists to support the trial court's findings. See Long, supra, at 332; State v. Medcalf (1996), 111 Ohio App.3d 142, 145, 675 N.E.2d 1268; Dunlap, supra. The reviewing court then must independently determine, without deference to the trial court, whether the trial court properly applied the substantive law to the facts of the case. See Long; State v. Williams (1993), 86 Ohio App.3d 37, 41, 619 N.E.2d 1141; State v. Venham (1994), 96 Ohio App.3d 649, 653, 645 N.E.2d 831; State v. Fields (Nov.29, 1999), Hocking App. No. 99 CA 11. See, generally, Ornelas v. United States (1996), 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911.

B

FOURTH AMENDMENT

{¶ 15} The Fourth Amendment to the United States Constitution protects individuals against unreasonable governmental searches and seizures. See, e.g., Delaware v. Prouse (1979), 440 U.S. 648, 662, 99 S.Ct. 1391, 59 L.Ed.2d 660. "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment-subject only to a few specifically established and well-delineated exceptions." Katz v. United States (1967), 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576. Once the defendant demonstrates that he was subjected to a warrantless search or seizure, the burden shifts to the state to establish that the warrantless search or seizure was constitutionally permissible. See Maumee v. Weisner (1999), 87 Ohio St.3d 295, 297, 720 N.E.2d 507; Xenia v. Wallace

(1988), 37 Ohio St.3d 216, 524 N.E.2d 889, paragraph two of the syllabus.

{¶ 16} In the case at bar, the appellee attempts to justify the officer's conduct under either of the following two exceptions: (1) the patdown search for weapons exception; and (2) the probable cause exception.

C

PATDOWN SEARCH FOR WEAPONS EXCEPTION

{¶ 17} Before we address the patdown search for weapons exception, we first observe that the appellee did not attempt to justify the officer's conduct as a patdown search during the trial court proceedings. Nevertheless, in the interests of justice we will consider whether this exception applies.

{¶ 18} During a routine traffic stop, an officer may conduct a patdown search for weapons upon a passenger in the vehicle if the officer has a "reason to believe that [the officer] is dealing with an armed and dangerous individual, regardless of whether [the officer] has probable cause to arrest the individual for a crime." Terry v. Ohio (1968), 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889; see, also, Arizona v. Johnson (2009), 555 U.S. 323, 129 S.Ct. 781, 787, 172 N.E.2d 694, quoting Knowles v. Iowa (1998), 525 U.S. 113, 117-118, 119 S.Ct. 484, 142 L.Ed.2d 492 (stating that "officers who conduct 'routine traffic stops' may 'perform a patdown of a driver and any passengers upon reasonable suspicion that they may be armed and dangerous'"); Pennsylvania v. Mimms (1977), 434 U.S. 106, 98 S.Ct. 330, 54 L.E.2d 331. The purpose of this patdown search is not to discover evidence of a crime, but only to search for weapons that may be used to harm the officer during the course of the traffic stop. See State v. Evans (1993), 67 Ohio St.3d 405, 408, 618 N.E.2d 162, quoting Adams v. Williams (1972), 407 U.S. 143, 146, 92

S.Ct. 1921, 1923, 32 L.Ed.2d 612 (stating that the purpose of a Terry "'search is not to discover evidence of a crime, but to allow the officer to pursue his investigation without fear of violence'"). A patdown search is limited in scope to discovering weapons that might be used to harm the officer "and cannot be employed by the searching officer to search for evidence of a crime." Evans, 67 Ohio St.3d at 414. Thus, a patdown search must "be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." Terry, 392 U.S. at 29. When a patdown search exceeds the determination of whether the suspect is armed, it is not valid under Terry and its progeny, and its fruits will be suppressed. Id.

{¶ 19} The Ohio Supreme Court has recognized that "[t]he right to frisk is virtually automatic when individuals are suspected of committing a crime, like drug trafficking, for which they are likely to be armed." Evans, 67 Ohio St.3d at 413, citing State v. Williams (1990), 51 Ohio St.3d 58, 554 N.E.2d 108, and United States v. Ceballos (E.D.N.Y.1989), 719 F.Supp. 119, 126 ("The nature of narcotics trafficking today reasonably warrants the conclusion that a suspected dealer may be armed and dangerous."); State v. Abernathy, Scioto App. No. 07CA3160, 2008-Ohio-2949, ¶37; see, also, State v. Thompson, Hamilton App. No. C-050400, 2006-Ohio-4285, ¶11 (stating that "[t]he very nexus between drugs and guns can create a reasonable suspicion of danger to the officer" and "[w]hen investigating drug activity, officers have a legitimate concern for their own safety, and that concern can justify a pat-down search for weapons").

{¶ 20} In the case sub judice, the officer stopped the vehicle for a traffic violation and had received information from narcotics detectives that the occupants were suspected of carrying

drugs in the vehicle.   Thus, the officer's right to frisk would have been virtually automatic.

However, the officer did not attempt to justify his actions as a "frisk," or a patdown search for

weapons.   Rather, the officer candidly admitted that he was not simply "frisking" for weapons.

We have previously found that an officer's statement regarding his intent in conducting a search

carries great weight in determining whether a search was a weapons patdown search or a

full-scale search.   See State v. Kennedy (Sept. 30, 1999), Ross App. No. 99CA2472, fn.8, citing

State v. White (1996), 110 Ohio App.3d 347, 355, 674 N.E.2d 405 (noting that search not

justified under patdown exception when officers expressly testified that they were frisking the

suspect to discover contraband "which is clearly not permitted on a Terry pat-down"); see, also,

State v. Taylor, Cuyahoga App. No. 94853, 2011-Ohio-1554, ¶26-27 (concluding that search not

justified as a patdown for weapons when officer testified, "We're patting her down for–I'm

patting her down for anything, anything possible").   Because the officer plainly testified in the

case sub judice that he searched for evidence and not a weapon, we must reject the appellee's

attempt to justify the officer's conduct as a limited patdown search for weapons.   As such, for

the officer's conduct to pass constitutional muster, the facts must establish that he possessed

probable cause to search appellant and that an exception to the warrant requirement applies.   See

State v. Moore (2000), 90 Ohio St.3d 47, 49, 734 N.E.2d 804.

D

PROBABLE CAUSE EXCEPTION

{¶ 21}  A search conducted without a warrant is reasonable under the Fourth Amendment

if: (1) probable cause exists to conduct the search; and (2) an exception to the warrant

requirement applies.   See Katz v. United States (1967), 389 U.S. 347, 357, 88 S.Ct. 507, 19

L.Ed.2d 576; Moore, 90 Ohio St.3d at 49.   If the prosecution fails to show either the existence of

probable cause or that an exception to the warrant requirement applies, then the search is

unreasonable and the court must suppress the unlawfully obtained evidence.   See Moore, 90

Ohio St.3d at 49, citing Mapp v. Ohio (1961), 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, and

AL Post 763 v. Ohio Liquor Control Comm. (1998), 82 Ohio St.3d 108, 111, 694 N.E.2d 905,

908.

E

PROBABLE CAUSE DEFINED

**{¶ 22}**  "'Probable cause exists if the facts and circumstances known to the officer

warrant a prudent man in believing that [an] offense has been committed.'   Henry v. United

States (1959), 361 U.S. 98, 102, 80 S.Ct. 168, 4 L.Ed.2d 134.   'Probable cause does not require

the same type of specific evidence of each element of the offense as would be needed to support

a conviction.'   Adams v. Williams (1972), 407 U.S. 143, 149, 92 S.Ct. 1921, 32 L.Ed.2d 612."

State v. Perez, 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶73.   Rather, "probable

cause is a fluid concept-turning on the assessment of probabilities in particular factual

contexts-not readily, or even usefully, reduced to a neat set of legal rules."   Illinois v. Gates

(1983), 462 U.S. 213, 231, 103 S.Ct. 2317.   Probable cause requires "'only the probability, and

not a prima facie showing, of criminal activity.'"   Gates, 462 U.S. at 235, quoting Spinelli v.

United States (1969), 393 U.S. 410, 419, 89 S.Ct. 584, 21 L.Ed.2d 637.   As the court explained

in Gates:

> "'The process does not deal with hard certainties, but with probabilities.
> Long before the law of probabilities was articulated as such, practical people
> formulated certain common-sense conclusions about human behavior; jurors as

factfinders are permitted to do the same-and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.'"

Id. at 231-232, quoting United States v. Cortez (1981), 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621.

{¶ 23} In determining whether a law enforcement officer possessed probable cause to conduct a search, a court must review the totality of the circumstances known to the officer at the time of the search. Beck v. Ohio (1964), 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142. "Probable cause must be based upon objective facts that would justify the issuance of a warrant by a magistrate." Moore, 90 Ohio St.3d at 49, citing State v. Welch (1985), 18 Ohio St.3d 88, 92, 18 OBR 124, 127, 480 N.E.2d 384. Thus, the officer must possess sufficient facts from a reasonably trustworthy source that a search will uncover evidence of a crime. See State v. Hill (May 15, 1991), Jackson App. No. 632; Beck, 379 U.S. at 91; see, also, State v. Williams, Ross App. No. 10CA3162, 2011-Ohio-763.

{¶ 24} In the case at bar, the trial court determined, and the appellee asserts, that the dog's alert on the location of the vehicle close to appellant's position in the vehicle provided the officer with probable cause to search appellant. We, however, find it unnecessary to determine whether a dog's alert, by itself, could establish probable cause to search a person seated in a vehicle. We observe that we have previously indicated that although a dog's alert on a vehicle with a defendant seated in it may be a relevant factor in the probable cause analysis, "this factor alone is insufficient to constitute probable cause to search [the] person."[3] State v. Jones,

---

[3] We question whether the Ohio Supreme Court would agree with

Washington App. No. 03CA61, 2004-Ohio-7280, ¶43.   Instead, rather than focus on one single

factor, such as the dog alert, we find that under the totality of the circumstances the officer in the

case sub judice possessed probable cause to search appellant.

F

TOTALITY OF THE CIRCUMSTANCES

{¶ 25}  An officer may derive his knowledge from an informant's tip.   In State v. Walker

(July 28, 1998), Franklin App. No. 97APA09-1219, the court held:

> "'* * * [P]olice have probable cause to conduct a search for contraband
> when detailed information provided to them by a confidential but reliable
> informant is subsequently corroborated, in some significant combination, with
> respect to the name or physical description of a suspect, the location of the illegal
> sale, the time of the sale, the description of the automobile driven by the suspect
> or the car's license plate numbers.'"

Quoting State v. Colbert (Mar. 7, 1990), Hamilton App. No. C-880471, and citing State v.

Darding (June 3, 1987), Hamilton App. No. C-860514 (search of defendant, which preceded

arrest, did not constitute unlawful search incident to arrest; officers had probable cause based on

tip by informant, who had been reliable in past, which set forth a description of the defendant, his

attire, the female to whom defendant would transfer drugs, the location of the transaction and the

fact that drugs would be found in the front pocket of defendant's vest).

{¶ 26}  Additionally, an officer may rely upon information collectively known to the law

enforcement officers involved in the search or investigation.   See State v. Cook (1992), 65 Ohio

---

this analysis.  In Moore, supra, the court held that the smell of
marijuana alone justifies a search of a defendant's vehicle and of
his person.  One could easily infer that a drug dog's alert on a
vehicle is at least similar, and maybe more precise, to a trained
officer's smell of marijuana.

St.3d 516, 521, 605 N.E.2d 70.   "An officer need not have knowledge of all of the facts

necessary to justify [a search], as long as the law enforcement body as a whole possesses such

facts and the detaining officer reasonably relies upon those who posses the facts."   Id.   Thus, for

example, "[a] radio broadcast may provide the impetus for an investigatory stop, even when the

officer making the stop lacks all of the information justifying the stop."   Id.   The Ohio Supreme

Court has therefore described the relevant Fourth Amendment inquiry as "whether the

law-enforcement community as a whole complied with the Fourth Amendment; the entire system

is required to possess facts justifying the stop or arrest, even though the arresting officer does not

have those facts."   Id. (citations omitted).   As the court explained in State v. Royster 1998 WL

351413, 3 (Ohio App. 5 Dist.) (Ohio App. 5 Dist.,1998):

> "In the case of a common investigation, the knowledge of one officer is
> the knowledge of all, and the collective knowledge of all the investigating
> officers, and the available objective facts, are the criteria to be used in assessing
> probable cause.   United States v. Stratton (C.A.1972), 453 Fed.2d 36, 37, cert.
> denied, 405 U.S. 1069, 92 S.Ct. 1515, 31 L.Ed.2d 800. See also, State v. Gough
> (1986), 35 Ohio App.3d 81, 82, 519 N.E.2d 842 (police may rely on collective
> knowledge in making arrest); State v. Roach, (1982), 8 Ohio App.3d 42, 455
> N.E.2d 1328 (officer intruding into restroom stall did not have knowledge of
> defendant's conduct, but police department as a whole had probable cause)."

See, also, State v. Pettry (Aug. 9, 1990), Jackson App. Nos. 617 & 618.

{¶ 27}   In the case at bar, we agree with the trial court's conclusion that the totality of the

circumstances demonstrate that Officer Campbell possessed probable cause to search appellant.

The information that the narcotics detectives received from the confidential informants proved

reliable.[4]   The narcotics detectives relayed to Officer Campbell their general knowledge that

---

[4]   Because appellant does not raise any significant argument regarding the CIs' reliability and whether the combined
circumstances, including the information provided in the search warrant affidavit, amounted to probable cause, we do not

drugs were suspected to be in the vehicle. Officer Campbell knew that the dog had alerted on the passenger side of the vehicle, where appellant was seated. Officer Campbell's own observations further heightened his suspicion that drugs would be located on appellant's person. He noticed toilet paper sticking out from appellant's pants, when coupled with the remaining facts and circumstances that included appellant's stiff walking and nervous behavior and the observation that appellant's companion also had toilet paper sticking out of his pants, the suspicion that appellant was attempting to hide something illicit was certainly a distinct probability. The investigatory team, as a whole, and, consequently, Officer Campbell, possessed sufficient facts to warrant a reasonable person to believe that drugs would likely be located on appellant's person. Cf. State v. Jones (May 7, 1999), Sandusky App. No. S-98-033 ("The detective had probable cause to believe that contraband was concealed in the black leather tote bag based on the confidential informant's information. The detective testified that he received numerous tips from a reliable informant that appellant had been selling a lot of crack cocaine; that appellant kept the drugs in a black leather tote bag; that appellant was at a given residence at a specific time with such drugs; that appellant would not be at the residence long; and that this informant had provided much past reliable information. A few minutes later, appellant, who was known to the detective, was seen by the detective in a vehicle matching the description given to the detective at the predescribed location. Upon stopping and approaching the automobile, the detective noticed appellant move his hand toward an object. Once the detective ordered appellant to remove his hand, the detective saw the black leather tote bag. The totality of these

---

dwell on the issue.

facts and circumstances clearly established probable cause for the warrantless search of the black leather tote bag."); State v. Walker (July 28, 1998), Franklin App. No. 97APA09-1219 ("Upon review, we find that the confidential informant's tip, which, as noted above, included the name and description of the defendant, the location and time of the arranged transaction, a description of the defendant's vehicle, as well as the informant's subsequent allegation at the scene that he observed defendant in possession of cocaine, furnished the police with probable cause. However, assuming that the officers did not have probable cause to proceed based on this information alone, we find that the subsequent actions of the narcotics detention dog alerting to the presence of drugs on the driver's seat of the vehicle, in conjunction with the informant's tip, provided officers with probable cause to arrest"), citing United States v. Klinginsmith (C.A.10, 1994), 25 F.3d 1507, 1510 (dog alerting to vehicle provided probable cause to arrest occupants); United States v. Diaz (C.A.6, 1994), 25 F.3d 392, 393-394 ("A positive indication by a properly-trained dog is sufficient to establish probable cause for the presence of a controlled substance"); United States v. Levine (C.A.5, 1996), 80 F.3d 129, 133 (evidence of dog alerting for narcotics, alone, is sufficient to support probable cause for a warrantless arrest).  Therefore, in light of the foregoing we believe that Officer Campbell possessed probable cause to search appellant's person.  Next, we must consider whether an exception to the warrant requirement applies.

G

EXCEPTION TO SEARCH WARRANT REQUIREMENT

{¶ 28}  The overriding function of the Fourth Amendment is to "'protect personal privacy and dignity against unwarranted intrusion by the State.'"  Moore, 90 Ohio St.3d at 52, quoting

Schmerber v. California (1966), 384 U.S. 757, 767, 86 S.Ct. 1826, 16 L.Ed.2d 908.   Thus,

ordinarily, "'compelling reasons'" or "'exceptional circumstances'" must exist to justify an

intrusion without a warrant.   Id., quoting McDonald v. United States (1948), 335 U.S. 451, 454,

69 S.Ct. 191, 93 L.Ed. 153.

{¶ 29}   A warrantless search is justified when an imminent danger exists that evidence

will be lost or destroyed if a search is not immediately conducted.   Id., citing Cupp v. Murphy

(1973), 412 U.S. 291, 294-296, 93 S.Ct. 2000, 36 L.Ed.2d 900 (exigent circumstances justified a

warrantless search of fingernails for skin, blood cells, and fabric when officers feared evidence

would be destroyed); Schmerber v. California, 384 U.S. at 769-771, 86 S.Ct. at 1835-1836, 16

L.Ed.2d at 919-920 (exigent circumstances justified the warrantless seizure of a blood sample for

alcohol level that would be destroyed through dissipation); Ker v. California (1963), 374 U.S. 23,

41-42, 83 S.Ct. 1623, 1634, 10 L.Ed.2d 726, 743 (exigent circumstances justified the warrantless

search of an apartment for drugs when officers feared destruction of evidence).   "Because

marijuana and other narcotics are easily and quickly hidden or destroyed, a warrantless search

may be justified to preserve evidence."   Moore, 90 Ohio St.3d at 52 (citations omitted).

{¶ 30}   In the case at bar, Officer Campbell was justified in performing a warrantless

search in order to preserve evidence.   Appellant obviously was attempting to conceal something

and the officers had ample, reliable information that appellant had illegal drugs.   The reasonable

inference is that appellant was attempting to hide drugs.   If the officer had not immediately

searched him, the danger of further attempts at detection or destruction of evidence existed.   See,

e.g., State v. Christopher, Clermont App. No. CA2009-08-04, 2010-Ohio-1816, ¶36 appeals not

allowed 126 Ohio St.3d 1583, 934 N.E.2d 355, 2010-Ohio-4542 and State v. Burnell, Hamilton

App. No. C-040386, 2005-Ohio-1323, ¶26 (exigent circumstances exception to warrant

requirement supported the warrantless search of a suspect's mouth, in which the suspect

concealed a balloon that contained heroine, in order to prevent the imminent destruction of

evidence.   Thus, exigent circumstances existed that justified the warrantless search.

{¶ 31}  Accordingly, based upon the foregoing reasons, we hereby overrule appellant's

sole assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs
herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County
Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted, it is
continued for a period of sixty days upon the bail previously posted.   The purpose of said stay is
to allow appellant to file with the Ohio Supreme Court an application for a stay during the
pendency of the proceedings in that court. The stay as herein continued will terminate at the
expiration of the sixty day period.

The stay will also terminate if appellant fails to file a notice of appeal with the Ohio
Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of
the Ohio Supreme Court.   Additionally, if the Ohio Supreme Court dismisses the appeal prior to
the expiration of said sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the
Rules of Appellate Procedure.

Kline, J. & McFarland, J.: Concur in Judgment & Opinion

For the Court

BY:_____
Peter B. Abele, Judge

NOTICE TO COUNSEL
Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.