[Cite as *State v. Willette*, 2013-Ohio-223.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

State of Ohio,                                           :
                                                        :
    Plaintiff-Appellee,                              :
                                                        :          Case No. 11CA32
    v.                                               :
                                                        :          DECISION AND
Frank K. Willette,                                      :          JUDGMENT ENTRY
                                                        :
    Defendant-Appellant.                             :          Filed:  January 23, 2013
_____

APPEARANCES:

Robert W. Bright, Middleport, Ohio, for Appellant.

James E. Schneider, Washington County Prosecuting Attorney, and Alison L. Cauthorn, Washington County Assistant Prosecuting Attorney, Marietta, Ohio, for Appellee.
_____

Kline, J.:

{¶1}   Frank K. Willette appeals the judgment of the Washington County Court of Common Pleas, which convicted him of possession of cocaine after denying a motion to suppress.  Initially, Willette contends that a state trooper conducted an unconstitutional pat down of Willette before the trooper placed Willette in a police cruiser.  This first pat down did not, however, reveal the presence of contraband.  Consequently, Willette cannot show that he was prejudiced by the allegedly unconstitutional pat down.  Next, Willette contends that a later pat down of Willette, by a different state trooper, was unconstitutional.  Because the second pat down of Willette was a legitimate protective search for weapons, we disagree.  Next, Willette contends that the trial court should have granted his motion to suppress because the officer could not have seen the

contraband through the outstretched fabric of Willette's sock.  The trial court found that the contraband in Willette's sock was visible.  Furthermore, competent credible evidence supports the trial court's findings of fact.  As a result, Willette's argument lacks merit.  Accordingly, we overrule Willette's assignments of error and affirm the judgment of the trial court.

I.

{¶2}    On September 19, 2010, at approximately 2:45 a.m., Willette was driving westbound on State Route 550.  There were two passengers in the car with Willette. Tyson Butcher was the front-seat passenger, and Walter Harrell was riding in the back seat.

{¶3}    At the same time, Trooper John Smith and Sgt. Todd McDonald of the Ohio Highway Patrol were in a cruiser travelling on State Route 550.  Trooper Smith was driving the cruiser, and he initiated a traffic stop of Willette's vehicle.  Willette exited the vehicle so that Trooper Smith could conduct a field sobriety test.  Trooper Smith decided to administer the test in the front seat of the cruiser.  And before placing Willette in the cruiser, Trooper Smith conducted a routine pat down of Willette. (Hereinafter, we will refer to Trooper Smith's pat down of Willette as the "first pat down.")  The first pat down did not reveal the presence of weapons or contraband.

{¶4}    While Trooper Smith conducted Willette's field sobriety test, Sgt. McDonald investigated Butcher.  (Sgt. McDonald believed that he saw marijuana on Butcher's shirt.)  Eventually, Sgt. McDonald discovered that Butcher had contraband on his person, and he suggested that Butcher work with law enforcement by participating in a drug purchase.  Apparently, Butcher did not want Willette and Harrell to know that he

was discussing the possibility of cooperating with law enforcement. And at some point during that discussion, Butcher told Sgt. McDonald that Willette and Harrell were "killers." Suppression Hearing Tr. at 71.

{¶5} As a result of Butcher's comment, Sgt. McDonald became concerned for his and Trooper Smith's safety. Sgt. McDonald advised Trooper Smith to be on alert. Then Sgt. McDonald ordered Willette out of the cruiser to conduct another pat down of Willette. (Hereinafter, we will refer to Sgt. McDonald's pat down of Willette as the "second pat down.") During the second pat down, Sgt. McDonald observed a baggie containing a white substance inside Willette's black sock. Sgt. McDonald stated that Willette's black socks were stretched tight enough that the substance was visible through the fabric. Additionally, Sgt. McDonald testified that he believed the substance was crack cocaine. Sgt. McDonald seized the substance in Willette's sock, and Willette was placed under arrest.

{¶6} Willette filed a motion to suppress the evidence found during the traffic stop, but the trial court denied Willette's motion. Eventually, a jury found Willette guilty of possession of cocaine.

{¶7} Willette appeals and asserts the following assignments of error: I. "THE TRIAL COURT ERRED IN FINDING THAT THE FIRST PAT DOWN OF THE DEFENDANT/APPELLANT WAS LEGALLY PERMISSIBLE." II. "THE TRIAL COURT ERRED IN FINDING THAT THE SECOND PAT DOWN OF THE DEFENDANT/APPELLANT WAS LEGALLY PERMISSIBLE." And III. "THE TRIAL COURT ERRED IN FAILING TO SUPPRESS THE BAGGIE FOUND IN THE

DEFENDANT/APPELLANT'S SOCK AS A RESULT OF THE ILLEGAL SECOND PAT DOWN."

## II.

**{¶8}** All three assignments of error challenge the trial court's denial of Willette's motion to suppress. As a result, we will use the same standard of review for each assignment of error.

**{¶9}** Our "review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 100, quoting *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. Therefore, we "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8. "Accepting these facts as true, [we] must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id. Accord Roberts* at ¶ 100; *State v. Stepp*, 4th Dist. No. 09CA3328, 2010-Ohio-3540, ¶ 14.

## A.

**{¶10}** In his first assignment of error, Willette contends that the first pat down was unconstitutional.

**{¶11}** The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue,

but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The Fourth Amendment "applie[s] to the states through the Fourteenth Amendment." *State v. Moore*, 90 Ohio St.3d 47, 48, 734 N.E.2d 804 (2000).

**{¶12}** "For a search or seizure to be reasonable under the Fourth Amendment, it must be based upon probable cause and executed pursuant to a warrant." *Id.* at 49, citing *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *State v. Brown*, 63 Ohio St.3d 349, 350, 588 N.E.2d 113 (1992). This involves a two-step analysis. "First, there must be probable cause." *Moore* at 49. "'Probable cause' is defined as a reasonable ground of suspicion that is supported by facts and circumstances, which are sufficiently strong to warrant a prudent person in believing that an accused person had committed or was committing an offense." *State v. Jones*, 4th Dist. No. 03CA61, 2004-Ohio-7280, ¶ 40. "If probable cause exists, then a search warrant must be obtained unless an exception to the warrant requirement applies. If the state fails to satisfy either step, the evidence seized in the unreasonable search must be suppressed." *Moore* at 49, citing *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *AL Post 763 v. Ohio Liquor Control Comm.*, 82 Ohio St.3d 108, 111, 694 N.E.2d 905 (1998).

**{¶13}** However, "[d]uring a routine traffic stop, an officer may conduct a patdown search for weapons upon [an occupant of] the vehicle if the officer has a 'reason to believe that [the officer] is dealing with an armed and dangerous individual, regardless of whether [the officer] has probable cause to arrest the individual for a crime.'" *State v. Kelley*, 4th Dist. No. 10CA3182, 2011-Ohio-3545, ¶ 18, quoting *Terry v. Ohio*, 392 U.S.

1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "'The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence * * *.'" (Omission sic.) *Minnesota v. Dickerson*, 508 U.S. 366, 373, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), quoting *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). "If, during a protective search, officers discover contraband, it is admissible." *State v. Hackett*, 171 Ohio App.3d 235, 2007-Ohio-1868, 870 N.E.2d 235, ¶ 16 (6th Dist.), citing *State v. Goodwin*, 2d Dist. No. 21101, 2006-Ohio-3368, ¶ 15.

**{¶14}** Trooper Smith testified that he routinely pats down individuals before placing them inside a cruiser. Willette claims that there was no evidence that Trooper Smith had a reasonable suspicion that Willette was armed and dangerous. As a result, Willette argues that the first pat down was not a legitimate protective search under *Terry*.

**{¶15}** Even assuming that the first pat down was not justified under *Terry*, Willette cannot show that he was prejudiced by the pat down. This is so because Trooper Smith did not discover any evidence during the first pat down. *See State v. Hodge*, 10th Dist. No. 11AP-1099, 2012-Ohio-4306, ¶ 9 ("[A]ppellant cannot establish that the search resulted in prejudice to him because no evidence was obtained from it."); *see also State v. Ward*, 9th Dist. No. 91CA005069, 1991 WL 274494, *2 (Dec. 18, 1991).

**{¶16}** Accordingly, we overrule Willette's first assignment of error.

B.

{¶17} In his second assignment of error, Willette argues that the second pat down of Willette was unconstitutional because Trooper Smith had already conducted a pat down.

{¶18} "When a protective search exceeds the determination of whether the suspect is armed, it is not valid under *Terry*, and its fruits will be suppressed." *Hackett*, 171 Ohio App.3d 235, 2007-Ohio-1868, 870 N.E.2d 235, at ¶ 13, citing *Dickerson*, 508 U.S. at 373, 113 S.Ct. 2130, 124 L.Ed.2d 334. "The rationale for a protective search * * * becomes attenuated with successive searches." *Hackett* at ¶16, citing *Jackson v. State*, 785 N.E.2d 615, 620 (Ind.App.2003). Thus, "[a] protective search for weapons during an investigative search is acceptable to a point." *Hackett* at ¶ 17. However, "[w]hen the use of multiple protective searches exceeds the rationale behind a *Terry*-type investigation, it becomes unreasonable." *Id.*

{¶19} Here, the evidence shows that Sgt. McDonald had "'reason to believe that [he was] dealing with [] armed and dangerous individual[s].'" *Kelley*, 2011-Ohio-3545, at ¶ 18, quoting *Terry*, 392 U.S. at 27, 88 S.Ct. 1868, 20 L.Ed.2d 889. The statement that Willette and Harrell were "killers" justified Sgt. McDonald's belief that Willette and Harrell may have posed a danger. Additionally, Sgt. McDonald testified about his concerns regarding Harrell's actions: "[T]he back seat passenger actually lays down at some point and we can't even see what he's doing in the car. So I was concerned that we'd probably be in a shooting." *Id.* at 76.

{¶20} Moreover, the evidence shows that Sgt. McDonald took Butcher's statement about Willette and Harrell being killers seriously. After Butcher's statement, Sgt. McDonald immediately called for backup. Sgt. McDonald testified: "I had Trooper

Smith exit the cruiser, and then I told him to cover down, which essentially means, draw his weapon and to watch." Suppression Hearing Tr. at 72. Therefore, because Sgt. McDonald had reason to believe that he was dealing with an armed and dangerous individual, we find that the second pat down was a legitimate, protective search under *Terry*.

**{¶21}** Willette argues that "Sgt. McDonald was using a second weapons pat down as a mere pretext for a search for drugs on [Willette]." Appellant's Brief at 14. In making this argument, Willette relies on *Hackett*, 171 Ohio App.3d 235, 2007-Ohio-1868, 870 N.E.2d 235. In *Hackett*, the police suspected that Hackett was carrying drugs based on a tip from a confidential informant. *Id.* at ¶ 5. The police searched Hackett twice but did not discover anything. *Id.* After the informant told the detective to look in Hackett's pants pockets, a third search revealed contraband. *Id.* In finding the third search unconstitutional, the court held that the third search was unrelated to a protective search for weapons. *See Id.* at ¶ 17.

**{¶22}** First, as stated above, the second pat down was a legitimate, protective search for weapons. Moreover, the evidence demonstrates that the second pat down was not a pretext to search Willette for drugs. Sgt. McDonald testified that he was not comfortable with Trooper Smith's initial pat down. Specifically, Sgt. McDonald stated as follows: "I'm aware that [Trooper Smith] patted [Willette] down. Doesn't mean I feel comfortable with him not missing something on a pat down." *Id.* at 89. The events that caused Sgt. McDonald to conclude that he should pat Willette down occurred *after* Trooper Smith had already patted Willette down. Thus, considering Butcher's comment and Sgt. McDonald's observation of Harrell laying down in the back seat, Sgt.

McDonald's concern regarding the adequacy of the first pat down was legitimate. And therefore, we conclude that the second pat down was reasonable despite the fact that Trooper McDonald had already conducted a pat down of Willette. *See generally State v. Jaeger*, 4th Dist. No. 92 CA 30, 1993 WL 248605, *4 (July 9, 1993) (stating that it would be "*unreasonable* to prevent the police" from conducting a second pat down when there was concern regarding the adequacy of the initial pat down) (emphasis sic).

**{¶23}** Thus, contrary to Willette's assertion, the evidence shows that Sgt. McDonald was not using the second pat down as a pretext to search for drugs. Moreover, the second pat down did not exceed the rationale behind a *Terry*-type investigation. Accordingly, we overrule Willette's second assignment of error.

C.

**{¶24}** In his third assignment of error, Willette argues that, even assuming the second pat down was permissible, Sgt. McDonald's "story about seeing the plastic baggie in [Willette's] sock is simply unbelievable." Appellant's Merit Brief at 16. As a result, Willette contends that the trial court should have suppressed the baggie from evidence.

**{¶25}** As stated above, the second pat down of Willette was a permissible *Terry* search. Additionally, a law enforcement officer may seize contraband that he or she observes in "plain view" while conducting a *Terry* search. *See State v. Jackson*, 11th Dist. No. 2011-L-107, 2012-Ohio-2123, ¶ 32; *State v. Howard*, 146 Ohio App.3d 335, 341-342, 766 N.E.2d 179 (5th Dist.2001); *State v. Hanifon*, 11th Dist. No. 90-L-15-173, 1992 WL 25281, *2 (Jan. 24, 1992); *Michigan v. Long*, 463 U.S. 1032, 1050, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983).

{¶26} The trial court found that the contraband in Willette's sock was in plain view. Specifically, the court found (1) that Sgt. McDonald "noted a baggie containing a white substance in Willette's sock" and (2) that "[t]he sock was stretched tightly over Willette's leg so that the substance was visible through the sock." Ruling on Motion to Suppress at 4. The court also found "[t]here was immediate probable cause to believe that the substance was cocaine." *Id.*

{¶27} Considering our standard of review, we must determine whether competent, credible evidence supports the trial court's findings. Here, there is competent, credible evidence that the contraband was in plain view. Sgt. McDonald testified that Willette was wearing black socks. Sgt. McDonald also stated as follows: "As I looked down, I saw in his sock, his left sock, was pulled so tight, there was some contraband in a plastic bag. It looked like crack or cocaine in that baggie. * * * [Willette's] sock was pulled so tight, that the stitching was, I guess, spread, and it, the bag was right there, plainly visible." Suppression Hearing Tr. at 76-77.

{¶28} Moreover, Sgt. McDonald made a statement during the second pat down that demonstrates the contraband in Willette's sock was in plain view. Sgt. McDonald informed Willette that Butcher had drugs. Willette indicated that he was unaware that Butcher was carrying drugs. Sgt. McDonald testified that he responded to Willette as follows: "And I asked [Willette], why are you so surprised? You got a bag of crack right there in your left pocket – or left sock. So it was plainly visible." Suppression Hearing Tr. at 77.

{¶29} Because competent, credible evidence supports the trial court's findings of fact, we must accept these findings. *Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372,

797 N.E.2d 71, ¶ 8.  As a result, we find that the contraband in Willette's sock was in plain view.  And because Sgt. McDonald viewed the contraband during a legitimate *Terry* search, Sgt. McDonald did not violate Willette's Fourth Amendment rights by seizing the contraband that was inside Willette's sock.

{¶30}  Accordingly, we overrule Willette's third assignment of error.  Having overruled all of Willette's assignments of error, we affirm the judgment of the trial court.

**JUDGMENT AFFIRMED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED.  Appellant shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

McFarland, P.J. & Abele, J.:  Concur in Judgment & Opinion.


For the Court


BY:_____
        Roger L. Kline, Judge



**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**