OPINION
{¶ 1} The State of Ohio appeals from an order of the Montgomery County Court of Common Pleas, which granted in part Syeta Davis's motion to suppress evidence. For the following reasons, the suppression order will be reversed and the case will be remanded for further proceedings.
 {¶ 2} The State's evidence at the suppression hearing, which was credited by *Page 2 
the trial court, revealed the following facts.
 {¶ 3} At approximately 12:38 p.m. on July 22, 2007, Dayton Police Officer Jeff Hieber was patrolling the Gettysburg Car Wash, which is located at 3115 North Gettysburg Avenue in Dayton. The car wash is located in a high drug area, and Hieber had previously made numerous drug arrests there.
 {¶ 4} Hieber noticed several cars at the car wash, some of which were being washed or dried and others that were being vacuumed. One vehicle, a blue Firebird, caught his attention because it was being neither vacuumed nor washed, even though there were bays available for either activity. The Firebird was occupied by two people — a male, later identified as Wilson Winn, was in the driver's seat, and a woman, Davis, was in the front passenger seat. Davis was wearing "a very short pair of shorts" and a mid-waist, very tight top.
 {¶ 5} Hieber observed the Firebird for several minutes, and then slowly drove around the car wash to see what the other cars were doing. As he drove past the Firebird, the officer saw Davis with what appeared to be a marijuana cigarette and a baggie with marijuana in her hand. Hieber circled around the car wash and then pulled up behind the Firebird.
 {¶ 6} After Hieber stopped behind Winn's car, Winn jumped out of the car, looked at the officer, and leaned into the car "like he [was] handing or doing something inside the car." Hieber stated that Winn acted suspicious and nervous. Hieber exited his cruiser and approached Winn. From outside the vehicle, Hieber could see a clear plastic baggie containing other small baggies of marijuana sticking out of the console area of the Firebird. Hieber asked Winn if he had a license, and Winn informed him *Page 3 
that his license was suspended. Hieber walked Winn to his cruiser, patted him down, and placed him in the right rear of the cruiser. Hieber testified that Winn was being arrested, and that the vehicle was going to be towed.
 {¶ 7} Hieber then returned to the Firebird and asked Davis if she had identification. Davis opened her purse widely on her lap, and Hieber immediately saw another baggie inside her purse which appeared to contain a generic form of Vicodin, a Schedule IV drug. Hieber "made a mental note" of the pills. When Davis offered Hieber her driver's license, Hieber also observed approximately half of a baggie that had been shoved between the left side of the passenger seat and the console. The baggie appeared to contain green, leafy marijuana as well as a pack of papers and a loose-leaf of rolling papers. Hieber took Davis's driver's license from her. Davis told the officer that she had been the driver and that Winn had just been sitting there. Hieber retrieved the baggie from beside Davis, and he told her that she would receive a minor misdemeanor ticket. The officer asked Davis to step from the vehicle, he performed a patdown for weapons, and he placed Davis, without handcuffs, into his cruiser. Hieber testified that Davis was not under arrest but remained under investigation for the pills.
 {¶ 8} Hieber notified the dispatcher of his situation and requested another crew to assist him. While asking Davis for her date of birth and social security number, Hieber asked her about the pills in her purse. Winn responded that the pills belonged to his mother but that she had given the pills to Davis because Davis is pregnant and needed them for pain.
 {¶ 9} Dayton Police Officer Melissa Oreck arrived soon thereafter. Hieber *Page 4 
advised her of the situation and asked her to handle Davis. Hieber asked Oreck to write a minor misdemeanor ticket for the marijuana and to check with the drug hotline to verify whether the pills were a Schedule IV controlled substance. The officers asked Davis to step out of Hieber's cruiser, and they walked her to the right rear of Oreck's cruiser.
 {¶ 10} Before being placed in Oreck's cruiser, Oreck conducted another patdown search. Oreck felt hard plastic in Davis's groin area. Davis informed her that it was a pill bottle. At Oreck's request, Davis retrieved the bottle and handed it to the officer. The bottle contained a baggie with a very large chunk of crack cocaine, another baggie with five or six empty gelcaps of heroin, and a baggie of Viagra pills. Davis was placed under arrest. Oreck subsequently performed another patdown of Davis and located a baggie of powdered cocaine underneath her bra.
 {¶ 11} Winn and Davis presented a different version of events at the suppression hearing. Winn stated that he was trying to retrieve his cell phone, not hide anything, when Hieber approached. Winn testified that Hieber approached him for having expired license plates, but he was arrested for driving without a license and marijuana. Davis denied rolling a joint or smoking at the car wash, and she stated that she did not open her purse in front of Hieber. Davis testified that she was transporting the pills in her purse to Winn's mother. She denied knowing what was in the pill bottle in her shorts or the baggie in her bra; she indicated that Winn had given them to her. Davis stated that Hieber searched the car and her purse without permission. The trial court did not credit Winn and Davis's testimony.
 {¶ 12} On July 27, 2007, Davis was indicted for possession of crack cocaine, *Page 5 
possession of cocaine, and possession of heroin. Davis filed a motion to suppress the evidence. After a hearing (held in three sessions), the motion was sustained in part and overruled in part. The court concluded that Heiber "was justified in making an investigatory stop and conducting a pat-down of Defendant for officer safety." The court denied the motion to suppress evidence obtained from the vehicle or from Davis's purse. The court, however, suppressed the additional drugs found during the pat-down by Oreck and any related statements. The court found that Oreck "did not have a reasonable belief that Defendant was armed when she conducted the pat-down."
 {¶ 13} On appeal, the State argues that the trial court erred in granting in part the motion to suppress. According to the State, "the sole issue to be reviewed de novo is whether the pills seen in Davis' purse provided Hieber with probable cause to arrest her." It states: "Since Heiber had probable cause to believe that the drugs were vicodin he was permitted to arrest Davis for them. Accordingly, the subsequent pat downs which revealed additional drugs would have occurred pursuant to a search incident to a lawful arrest."
 {¶ 14} The State's argument is unavailing. Even if Hieber had probable cause to arrest Davis for possession of vicodin, the fact remains that Davis was not under arrest for possession of the pills when Oreck conducted a second pat-down, and there is no evidence in the record that she was charged for possession of vicodin. Hieber testified that Davis's possession of marijuana was a minor misdemeanor for which he was going to write a ticket. In short, there is no evidence in the record that Davis would have been arrested — and that a search incident to an arrest would have *Page 6 
occurred — in the absence of Oreck's discovery of the crack cocaine, heroin, and powdered cocaine. Stated simply, whether Hieber had probable cause to arrest Davis for the pills is irrelevant to our analysis.
 {¶ 15} We disagree with the trial court, however that Oreck lacked a reasonable suspicion that Davis was armed to justify conducting a second patdown search. The police may conduct a limited protective search for concealed weapons if the officers reasonably believe that the suspect may be armed or a danger to the officers or to others. State v.Molette, Montgomery App. No. 19694, 2003-Ohio-5965, at ¶ 13.
 {¶ 16} Although Davis had already been frisked for weapons by Hieber prior to being placed in his cruiser, a male officer might be more restrained when patting down a female. Despite the fact that Davis was wearing very tight clothing consisting of very short shorts and a short, skimpy top, it was possible for her to conceal a small weapon in her groin and breast areas — areas which a male officer may be reluctant to pat down. In short, we find that Oreck's patdown of Davis prior to placing her in her cruiser was lawful. Accordingly, the trial court erred in granting in part the motion to suppress.
 {¶ 17} The assignment of error is sustained.
 {¶ 18} The judgment of the trial court will be reversed, and the case will be remanded for further proceedings.
FAIN, J. and GRADY, J., concur.
Copies mailed to:
Mark J. Keller
Jack Harrison
 Hon. Barbara P. Gorman *Page 1