[Cite as *State v. Bean*, 2016-Ohio-876.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

STATE OF OHIO,                              :

    Plaintiff-Appellee,                      :          CASE NO.   CA2015-07-136

                                     :          O P I N I O N
  - vs -                                                                  3/7/2016

                                       :

DESMOND BEAN,                           :

    Defendant-Appellant.              :

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2015-01-0100

Michael T. Gmoser, Butler County Prosecuting Attorney, Willa Concannon, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Daniel E. Whiteley, Jr., 602 Main Street, Suite 1309, Cincinnati, Ohio 45202, for defendant-appellant

**HENDRICKSON, J.**

{¶ 1}   Defendant-appellant, Desmond Bean, appeals a decision of the Butler County Court of Common Pleas denying his motion to suppress evidence.  For the reasons stated below, we affirm the decision of the trial court.

{¶ 2}   Around 1:10 a.m. on December 31, 2014, Butler County Deputy Sheriff William Bowling was patrolling in a rural area when he observed a vehicle traveling at a slow rate of

speed. Deputy Bowling followed the vehicle for approximately three miles, during which time the vehicle continued to travel well below the 55 m.p.h. speed limit. Deputy Bowling then initiated a traffic stop for slow speed and impeding traffic.

{¶ 3} Deputy Bowling approached the vehicle and found four men inside: Bean, who was in the driver's seat; a male passenger in the front; and two additional male passengers seated in the back of the vehicle. Deputy Bowling recognized the two passengers in the backseat of the car as John Ingersoll and Michael Estes because the men had frequent contact with law enforcement. Deputy Bowling asked Bean why he was traveling so slowly and Bean did not respond. However, one of the backseat passengers volunteered that they had seen deer in the area. Deputy Bowling obtained identification for all of the occupants and returned to his police cruiser to check for warrants.

{¶ 4} Deputy Bowling's initial check for warrants indicated that the front seat passenger had a robbery warrant and Ingersoll had a warrant from Hamilton Municipal Court. Later during the traffic stop, Deputy Bowling discovered that the check indicating the front seat passenger had a warrant was incorrect and a "sound alike," an individual who had a similar name and social security number or date of birth. However, Deputy Bowling did not discover this information until much later in the stop.

{¶ 5} After discovering some of the occupants had active arrest warrants, another deputy arrived at the scene. The deputies returned to the vehicle and observed an orange cap, indicative of a syringe, on the rear floorboard near Ingersoll. Ingersoll was then removed and patted down. Before Ingersoll was patted down, he was asked if he had any narcotics or anything that would "stick or poke" the officer, to which Ingersoll replied "no." However, during the pat-down, the deputy was stuck by a syringe in Ingersoll's pocket. The pat-down continued and a gallon-size freezer bag containing methamphetamine was found in Ingersoll's shoe. Ingersoll was then placed in the back of a police cruiser.

{¶ 6} The deputies continued to remove, pat-down, and place the occupants of the vehicle in the back of police cruisers. Because there were only two police cruisers at the scene, Estes was placed in the back of a police cruiser with Ingersoll, while the front seat passenger was placed in Deputy Bowling's cruiser. Bean, the last occupant to be removed, was frisked, handcuffed, and also placed in the back of Deputy Bowling's cruiser. Deputy Bowling did not recover any items from Bean during the frisk. While Bean was wearing a padded, zipped-up Carhartt jacket, Deputy Bowling did not unzip the jacket during the frisk.

{¶ 7} After all the occupants were frisked and placed into the cruisers, Deputy Donald Gabbard arrived at the scene. When Deputy Gabbard arrived, he was asked to separate Bean and the front seat passenger, as both men were still in the back of Deputy Bowling's cruiser. Deputy Gabbard removed Bean and performed another pat-down search. During the pat-down, Deputy Gabbard could not feel underneath Bean's Carhartt jacket due to its bulkiness. Deputy Gabbard unzipped the jacket, patted down the inside pockets, and felt two hard syringes and two plastic bags which he suspected contained narcotics. The items were removed and the plastic bags were discovered to contain heroin.

{¶ 8} A Butler County Grand Jury indicted Bean on one count of possession of heroin in violation of R.C. 2925.11(A) and one count of possession of drug abuse instruments in violation of R.C. 2925.12(A). Subsequently, Bean filed a motion to suppress the evidence. After an evidentiary hearing, the trial court denied Bean's motion to suppress.

{¶ 9} On May 18, 2015, Bean entered a no contest plea to all the counts of the indictment and the court found Bean guilty of possession of heroin and possession of drug abuse instruments. Bean was sentenced to a five-year community control period on the possession of heroin charge which was ordered to run concurrently to a three-year community control period, with a suspended 90-day jail sentence on the drug abuse instrument charge.

{¶ 10} Bean now appeals, asserting a sole assignment of error:

{¶ 11} THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION TO SUPPRESS.

{¶ 12} Bean challenges his removal from the vehicle, the ensuing two pat-downs, and the trooper's retrieval of contraband from his person. Specifically, Bean relies on the Ohio Supreme Court's decision in *State v. Lozada*, 92 Ohio St.3d 74 (2001), in arguing that the pat-down searches before he was placed into the police cruisers were unreasonable.

{¶ 13} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8; *State v. Jones*, 12th Dist. Brown No. CA2015-05-014, 2016-Ohio-67, ¶ 8. When considering a motion to suppress, the trial court, as the trier of fact, is in the best position to weigh the evidence in order to resolve factual questions and evaluate witness credibility. *Jones* at ¶ 8. In turn, when reviewing the denial of a motion to suppress, this court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *Id.*

{¶ 14} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution prohibit unreasonable searches and seizures, including unreasonable automobile stops. *Bowling Green v. Godwin*, 110 Ohio St.3d 58, 2006-Ohio-3563, ¶ 11. During a lawful traffic stop, it is reasonable for a police officer to order a motorist to get out of a car, even if the officer does not have suspicion of criminal activity. *Pennsylvania v. Mimms*, 434 U.S. 106, 111, 98 S.Ct. 330 (1977); *Maryland v. Wilson*, 519 U.S. 408, 412, 117 S.Ct. 882 (1997). Police officers are permitted to order motorists out of a vehicle because the "legitimate and weighty" concerns of officer safety during traffic stops

outweigh the de minimis intrusion into the driver's personal liberty.  *Mimms* at 110-111.

{¶ 15} In *Lozada*, 92 Ohio St. 3d 74, the Ohio Supreme Court addressed whether law enforcement could take one step further; whether during a routine traffic stop, an officer may search a motorist for weapons before placing the motorist into the officer's cruiser even where the officer "has no belief that the driver is armed or dangerous."  *Id.* at 76.  The Supreme Court held "it is reasonable for an officer to search the driver for weapons before placing the driver in a patrol car, if placing the driver in the patrol car during the investigation prevents officers or the driver from being subjected to a dangerous condition and placing the driver in the patrol car is the least intrusive means to avoid the dangerous condition."  *Id.* at paragraph one of the syllabus.  However, it is unreasonable for an officer to conduct a pat-down search of an individual before placing him in the patrol car if the sole reason is for convenience of the officer.  *Id.* at paragraph two of the syllabus.

{¶ 16} In the case at bar, the initial pat-down and placement of Bean in Deputy Bowling's police cruiser was not merely for the convenience of the officers.  The evidence at the suppression hearing established: the stop occurred late at night on a rural road; there were four occupants in the vehicle, two of which Deputy Bowling was familiar with due to their frequent involvement with law enforcement; Deputy Bowling's initial check indicated two of the occupants had outstanding arrest warrants; Deputy Bowling observed a syringe cap in the vehicle's rear floorboard; Ingersoll was found to be in possession of syringes and methamphetamine; and an officer was stuck by one of the syringes found on Ingersoll.  After all these events occurred, Deputy Bowling decided to place Bean into his police cruiser and conduct a pat-down search for weapons.  In light of all the facts available to Deputy Bowling, the pat-down search of Bean before placing him into the police cruiser was to prevent law enforcement from being subjected to a dangerous condition and was the least intrusive means of avoiding the dangerous condition.  Therefore, Deputy Bowling's actions were

reasonable.

**{¶ 17}** We also find that Deputy Gabbard's second pat-down search of Bean was reasonable and was the least intrusive means of avoiding a dangerous condition. In so holding, we recognize that the rationale for a protective *Terry* search "becomes attenuated with successive searches." *State v. Hackett*, 171 Ohio App.3d 235, 2007-Ohio-1868, ¶ 16 (6th Dist.). While a "protective search for weapons is acceptable to a point * * * when the use of multiple protective services exceeds the rationale behind a *Terry*-type investigation, it becomes unreasonable." *Id.* at ¶ 17. However, in this case, Deputy Gabbard was faced with an active narcotics investigation and one of the police officers at the scene had already been stuck by a needle. It is well-established that officers have legitimate concerns regarding violence when investigating drug activity and these concerns will often justify a pat-down search for weapons. *See State v. Oatis*, 12th Dist. Butler No. CA2005-03-074, 2005-Ohio-6038, ¶ 23. Moreover, before Deputy Gabbard's pat-down search, Bean was placed in the back of a police cruiser with an individual who police believed had an outstanding felony arrest warrant. Deputy Gabbard explained that he conducted another pat-down search for his own safety, he did not observe the first pat-down, and that he will always pat-down an individual before placing them into his own police cruiser. *See State v. Willette*, 4th Dist. Washington No. 11CA32, 2013-Ohio-223, ¶ 22 (second pat-down reasonable when concerns regarding adequacy of first pat-down). Therefore, in light of all the circumstances available to Deputy Gabbard, we find the second pat-down frisk was reasonable.

**{¶ 18}** Lastly, we find that Deputy Gabbard's seizure of the syringes and drugs inside Bean's pocket was permissible pursuant to the "plain feel" doctrine. Under the "plain feel" doctrine, if, during a pat-down, the officer feels an object whose contour or mass makes its identity immediately apparent as contraband, the officer may seize the object. *Minnesota v. Dickerson*, 508 U.S. 366, 375-376, 113 S.Ct. 2130 (1993). The "immediately apparent"

- 6 -

requirement is satisfied if the officer has probable cause to associate the object with criminal activity, based on the totality of the surrounding circumstances. *State v. Grant*, 12th Dist. Preble No. CA2014-12-014, 2015-Ohio-2464, ¶ 17. Further, under the "plain feel" doctrine, an officer may not manipulate the object to determine its incriminating nature. *Id.*

{¶ 19} At the hearing, Deputy Gabbard testified that when he patted down Bean's right inside coat pocket, he felt multiple syringes and two plastic bags. Deputy Gabbard stated he did not manipulate the items in any way and after he felt the items, he asked Bean what was inside his pocket. Bean replied "you know." Deputy Gabbard asked a second time and Bean gave the same response. Based on the totality of the circumstances, we find that Deputy Gabbard had probable cause to believe the items in Bean's pocket were contraband. Further, we find this case distinguishable from *State v. Rodriguez*, 12th Dist. Butler No. CA2014-03-073, 2015-Ohio-571. In *Rodriguez*, this court held that when an officer knew a bulge in the defendant's pocket was not a weapon or contraband but instead "a large wad of cash," he could not, under the plain feel doctrine, pull out the cash. *Id.* at ¶ 22. Unlike *Rodriguez*, in this case Deputy Gabbard immediately recognized the items in Bean's pocket as contraband. Therefore, Deputy Gabbard properly seized the syringes and drugs pursuant to the "plain feel" doctrine.

{¶ 20} Accordingly, the trial court did not err in denying Bean's motion to suppress. Bean's sole assignment of error is overruled.

{¶ 21} Judgment affirmed.

M. POWELL, P.J., and RINGLAND, J., concur.