[Cite as *State v. Wyatt*, 2021-Ohio-3146.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2020-11-076 |
| | : | O P I N I O N |
| - vs - | | 9/13/2021 |
| | : | |
| CHARLES R. WYATT, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 19CR035909

David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for appellee

Johnna M. Shia, P.O. Box 145, Springboro, Ohio 45066, for appellant

**HENDRICKSON, J.**

{¶ 1} Appellant, Charles R. Wyatt, appeals from a decision of the Warren County Court of Common Pleas denying his motion to suppress. For the reasons stated below, we affirm the decision of the trial court.

{¶ 2} On October 21, 2019, appellant was indicted on one count of aggravated possession of drugs (methamphetamine) in violation of R.C. 2925.11(A) and (C)(1)(b), a

felony of the third degree, one count of counterfeiting in violation of R.C. 2913.30(B)(3) and (C), a felony of the fourth degree, one count of possessing drug abuse instruments in violation of R.C. 2925.12(A) and (C), a misdemeanor of the second degree, and one count of the illegal use or possession of drug paraphernalia in violation of R.C. 2925.14(C)(1) and (F)(1), a misdemeanor of the fourth degree. The charges arose following a pat down of appellant's person, during which appellant was found to be in possession of methamphetamine and a counterfeit $50 bill.

{¶ 3} Appellant pled not guilty to the charges and moved to suppress evidence and statements obtained following the detention and search of his person, arguing there was no reasonable articulable suspicion justifying law enforcement's search or seizure of his person. He further argued that law enforcement exceeded the scope of a permissive search for weapons by searching for drugs and manipulating objects in his pockets.

{¶ 4} A hearing on appellant's motion to suppress was held on February 4, 2020. At this time, the state presented testimony from two officers assigned to the Warren County Drug Task Force (WCDTF). Sergeant Lacy testified his works for the Warren County Sheriff's Office and has been assigned to the WCDTF since 2014. Around 2:45 p.m. on August 16, 2019, he and other members of the WCDTF were in the parking lot of the Franklin Municipal Court in order to serve an arrest warrant on Kayla Nipper. Nipper was being arrested on a charge of mailing narcotics to jail. Sergeant Lacy and another officer, Officer Aspacher, were dressed in street clothes rather than in a uniform, but both men wore vests identifying themselves as "Sheriff" or "Police." Other officers on scene to assist with the arrest, including Trooper Roddy, an officer with the Ohio State Highway Patrol, were in uniform.

{¶ 5} Nipper drove into the court's parking lot and parked next to Sergeant Lacy's unmarked vehicle. Appellant was seated in the front passenger seat of Nipper's car. Nipper

exited her vehicle and started walking towards the courthouse. At this time, Sergeant Lacy and other officers approached Nipper and took her into custody without incident.

{¶ 6} Appellant remained in Nipper's car during Nipper's arrest. Sergeant Lacy testified that after Nipper was arrested, he looked at appellant, who was approximately 50 feet away, and observed that appellant appeared surprised and had a "shocked, stunned expression" on his face. Sergeant Lacy also observed that appellant's hands were down by his waist, manipulating something in his crotch area, as if in "an attempt to conceal something." Sergeant Lacy approached the vehicle while repeatedly telling appellant to put his hands up. Sergeant Lacy explained appellant's failure to immediately raise his hands as directed was concerning because "when we approach anyone in a drug investigation, we're concerned with weapons and concealment of evidence." The sergeant further testified that as a result of the thousands of drug investigations he had been involved in, he "always" has concerns with suspects or their associates having weapons on their person, explaining that "[w]ith drugs * * * comes weapons especially, when we're dealing with meth."

{¶ 7} With the help of Trooper Roddy, Sergeant Lacy removed appellant from the vehicle and handcuffed him. Trooper Roddy did a "quick" weapons pat down of appellant's person. However, because Trooper Roddy was a female officer patting down a male subject, her pat down did not extend to appellant's crotch area, where Sergeant Lacy had observed appellant moving his hands.[1] Trooper Roddy did not discover any weapons on

---

1. Sergeant Lacy testified as follows when asked about the thoroughness of Trooper Roddy's pat down of appellant's person:

> [Prosecutor]: [D]o you recall how much of a pat down [Trooper Roddy] did? Was it a quick one, was it a long in depth one?
>
> [Sergeant. Lacy]: I believe she probably just did a quick pat down for a weapons check. Trooper Roddy is a female. Mr. Wyatt's a male.
>
> [Prosecutor]: Why is that significant then?

appellant.

{¶ 8}   Subsequent to Trooper Roddy's pat down of appellant, Officer Aspacher approached appellant and read him his *Miranda* rights.  Appellant stated he had a Viagra pill on him.  Sergeant Lacy could not recall whether appellant indicated he had a prescription for the medicine.  He also could not recall whether Officer Aspacher retrieved the pill from appellant's person.  He did, however, recall that Officer Aspacher, a male officer, conducted a pat down of appellant, during which crystal methamphetamine and a counterfeit $50 bill were located in appellant's pants pocket.

{¶ 9}   Officer Aspacher was the second officer to testify at the suppression hearing.  He testified that he has over 11 years of police experience and is currently employed by the city of Monroe Police Department  He was assigned to the WCDTF in May or June 2019.  He explained that he handles drug possession charges on a weekly basis and has been trained to identify street drugs, including methamphetamine.  Based on his training and experience, he is aware that "[d]rugs and guns go hand and hand."   In his drug

---

[Sergeant. Lacy]:  If at all possible, we like males to search males, females to search females.

[Prosecutor]:  Okay.  So, if that's the case and you were saying that the defendant was moving towards his crotch, would Trooper Roddy have been authorized or should she have been patting down the defendant in his crotch region?

* * *

[Sergeant. Lacy]:  There are situations where a female would pat down a male, in very extreme situations.  If she's the only one there and she has to make sure that there's not a weapon there, absolutely.  But, if there's males standing right there, there would be absolutely no reason for a female to pat a male down while there are male officers there.

[Prosecutor]:  Okay, in that area?

[Sergeant. Lacy]:  Right.

[Prosecutor]:  Meaning in the crotch?

[Sergeant. Lacy]:  Right.

investigations, he frequently encounters weapons, including individuals armed with knives "pretty much every single time."

{¶ 10} Officer Aspacher testified that on August 16, 2019, he was dressed in plain clothes and parked in the Franklin Municipal Court parking lot awaiting Nipper's arrival. He was stationed on the opposite side of the lot from where Nipper parked. By the time Officer Aspacher approached Nipper's car, Nipper had already been taken into custody and appellant had been removed from Nipper's vehicle and handcuffed. Although he believed Trooper Roddy had conducted a "real quick pat down" of appellant, he did not think she had done an "in depth" pat down due to appellant being the opposite sex. Because he was concerned about appellant being able to reach for a weapon, he decided to conduct a pat down. However, before patting down appellant, he read appellant his *Miranda* rights and asked appellant if he had anything illegal on his person. Appellant responded he had some Viagra in his pocket but did not indicate whether he had a prescription for the drug. Officer Aspacher located the Viagra in appellant's front right jeans pocket before conducting a pat down of appellant's person.

{¶ 11} During the pat down, Officer Aspacher observed a bulge in the right front pocket of appellant's jeans. Officer Aspacher ran his flat hand across the bulge without squeezing, moving, rolling, or pushing on it and heard "plastic crinkling," which in his training and experience was consistent with drug storage. It was immediately apparent to Officer Aspacher what he was feeling was methamphetamine, "just based on the size of it and what we were there for." Officer Aspacher retrieved the substance from appellant's pocket and observed a hard, semi-clear crystal substance consistent with methamphetamine in a clear plastic sandwich baggie. He also recovered a counterfeit $50 bill from appellant's pocket. Thereafter, appellant "made some statements" to him and a canine sniff of Nipper's vehicle was conducted.

{¶ 12} After hearing from Sergeant Lacy and Officer Aspacher, the trial court took the matter under advisement. On March 4, 2020, the trial court issued a decision denying appellant's motion to suppress. The court found that the stop, or detention, of appellant was permissible as "there was reasonable articulable suspicion that appellant was engaged in, or about to engage in, criminal activity." Moreover, the court found that Officer Aspacher had not exceeded the scope of a permissive pat down and that the "plain feel doctrine" permitted the seizure of contraband discovered during the pat down for weapons.

{¶ 13} Following the denial of his motion to suppress, appellant entered a no contest plea to all the charges against him. Appellant was subsequently sentenced to an aggregate prison term of 30 months.

{¶ 14} Appellant timely appealed from his conviction, raising the following as his sole assignment of error:

{¶ 15} THE TRIAL COURT ERRED IN DENYING WYATT'S MOTION TO SUPPRESS.

{¶ 16} Appellant contends the trial court erred in denying his motion to suppress as the state failed to demonstrate that the officers had sufficient reasonable suspicion of criminal activity to initially detain him, to continue his detention, or to arrest him. He further contends that the officers did not have reasonable suspicion that he was armed and dangerous in order to conduct a pat down for weapons and that the second pat down exceeded the scope of what was authorized by the Fourth Amendment as the search was not for weapons.

{¶ 17} "Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact." *State v. Turner*, 163 Ohio St.3d 421, 2020-Ohio-6773, ¶ 14, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. The trial court, as the trier of fact, is in the best position to weigh the evidence to resolve factual questions and evaluate

witness credibility. *State v. Vaughn*, 12th Dist. Fayette No. CA2014-Ohio-05-012, 2015-Ohio-828, ¶ 8. Therefore, when reviewing a trial court's decision on a motion to suppress, this court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *Turner* at ¶ 14. "An appellate court * * * independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353, ¶ 12.

{¶ 18} Both the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution protect individuals from unreasonable searches and seizures. *State v. Jimenez*, 12th Dist. Warren No. CA2011-09-103, 2012-Ohio-3318, ¶ 9; *Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507 (1967). Any searches or seizures that occur "outside the judicial process, without prior approval by judge or magistrate are *per se* unreasonable under the Fourth Amendment – subject only to a few specially established and well-delineated exceptions." *Katz* at 357. An investigative stop, or a *Terry* stop, by a police officer is a common exception to the Fourth Amendment warrant requirement. *Terry v. Ohio*, 392 U.S. 1, 20-22, 88 S.Ct. 1868 (1968). Under *Terry*, a police officer may detain an individual without probable cause when the officer has reasonable suspicion based on specific, articulable facts, that criminal activity is afoot. *Id.* at 21. "An investigatory stop does not violate the Fourth Amendment to the United States Constitution if the police have reasonable suspicion that 'the person stopped is, or is about to be, engaged in criminal activity.'" *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, ¶ 35, quoting *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690 (1981).

{¶ 19} Reasonable articulable suspicion is "something more than an undeveloped suspicion or hunch" but is less than the level of suspicion required for probable cause. *State*

- 7 -

*v. Hinkston*, 12th Dist. Clermont No. CA2020-03-012, 2020-Ohio-6903, ¶ 18. "Reasonable articulable suspicion exists when there are specific and articulable facts which, taken together, with rational inferences from those facts, reasonably warrant the intrusion." *State v. Hill*, 12th Dist. Warren No. CA2015-05-044, 2015-Ohio-4655, ¶ 10, citing *State v. Bobo*, 37 Ohio St.3d 177, 178 (1988). Reasonable and articulable suspicion is determined by evaluating the totality of the circumstances "through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Popp*, 12th Dist. Butler No. CA2010-05-128, 2011-Ohio-791, ¶ 13. "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744 (2002), quoting *Cortez*, 449 U.S. at 418.

{¶ 20} After an officer makes a lawful *Terry* stop, the officer may conduct a limited protective search, or a pat down, for weapons if the officer has "reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." *Terry*, 392 U.S. at 27; *Popp* at ¶ 12. "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent main in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry* at 27. "The rationale behind the protective search is to allow the officer to take reasonable precautions for his own safety in order to pursue his investigation without fear of violence." *State v. Andrews*, 57 Ohio St.3d 86, 89 (1991), citing *Terry* at 24, 30.

{¶ 21} Based on the totality of the circumstances presented in the present case, we find that law enforcement had reasonable and articulable suspicion to effectuate a *Terry* stop on appellant in order to investigate the possibility of criminal activity and that the

officers acted lawfully in conducting a protective pat down of appellant for weapons. Appellant is correct that one's mere proximity to or association with others independently suspected of criminal activity does not alone provide a sufficient basis to search that person. *See Ybarra v. Illinois*, 444 U.S. 85, 91, 100 S.Ct. 338 (1979); *State v. Davis*, 140 Ohio App.3d 659, 664 (9th Dist.2000). However, Sergeant Lacy's testimony established that appellant's association with Nipper was not the sole basis for appellant's detention and subsequent pat down. Rather, Sergeant Lacy had reason to believe that Wyatt was engaged in, or was about to engage in, criminal activity when he was detained following Nipper's arrest.

{¶ 22} At the time law enforcement encountered appellant, they were arresting appellant's associate, Nipper, on drug-related crimes. Appellant appeared shocked and stunned that the arrest occurred. After appellant witnessed Nipper's arrest, appellant began to manipulate something in his crotch area, as if trying to conceal something. Sergeant Lacy observed the movements appellant made around his waist and the sergeant directed appellant to put up his hands. Appellant did so only after Sergeant Lacy made repeated demands.

{¶ 23} Sergeant Lacy explained that based on appellant's movements around his waist, the sergeant was concerned with "weapons and concealment of evidence." Following thousands of drug investigations over a more than 20-year career in law enforcement, Sergeant Lacy was well aware that weapons are commonly found among narcotic suspects and their associates.

{¶ 24} This court has previously recognized that "the need for a protective pat-down becomes more urgent where drugs are involved." *Jimenez*, 2012-Ohio-3318 at ¶ 15. *See also State v. Bales*, 2d Dist. Montgomery No. 24897, 2012-Ohio-4968, ¶ 23. "The very nexus between drugs and guns can create a reasonable suspicion of danger to the officer."

*State v. Thompson*, 1st Dist. Hamilton No. C-050400, 2006-Ohio-4285, ¶ 11.

{¶ 25} Accordingly, based on Sergeant Lacy's experience and training and his observations of appellant's behavior, we find that Sergeant Lacy had sufficient reasonable suspicion to detain appellant in order to conduct an investigative stop under *Terry.* Sergeant Lacy and his fellow officers acted lawfully in removing appellant from Nipper's vehicle, placing appellant in handcuffs, and subjecting him to a pat down.

{¶ 26} Appellant contends that even if the first pat down of his person, conducted by Trooper Roddy, was lawful, the second search conducted by Officer Aspacher violated his constitutional rights as there was no reasonable suspicion to detain him beyond the scope of the initial seizure and search. He contends that following Trooper Roddy's search, Officer Aspacher had no reason to believe he was armed and dangerous.

{¶ 27} This court has previously recognized that "the rationale for a protective *Terry* search 'becomes attenuated with successive searches.'" *State v. Bean*, 12th Dist. Butler No. CA2015-07-136, 2016-Ohio-876, ¶ 17, quoting *State v. Hackett*, 171 Ohio App.3d 235, 2007-Ohio-1868, ¶ 16 (6th Dist.). "[T]he basis for a *Terry* search is diminished each additional time an officer searches a subject." *State v. Dunlap*, 7th Dist. Columbiana No. 12 CO 31, 2013-Ohio-5637, ¶ 33. "When the use of multiple protective searches exceeds the rationale behind a *Terry*-type investigation, it becomes unreasonable." *Hackett* at ¶ 17. *Accord Bean* at ¶ 17.

{¶ 28} "A second-pat down search has been found to be justified when the officer who conducted the second pat-down search did not observe the first pat down or was concerned with the adequacy of the first pat down." *State v. Garrett*, 2d Dist. Montgomery No. 27630, 2018-Ohio-4530, ¶ 56. *See, e.g., Bean* at ¶ 17; *State v. Willette*, 4th Dist. Washington No. 11CA32, 2013-Ohio-223, ¶ 22; *State v. Davis,* 2d Dist. Montgomery No. 22572, 2008-Ohio-2885, ¶ 16.

{¶ 29} In *State v. Davis*, 2008-Ohio-2885, a female was frisked for weapons by a male officer before being placed in the officer's patrol car. During this search, no weapons were discovered. *Id.* at ¶ 7. The defendant was not under arrest at this time, although the officer was investigating pills he had observed in the defendant's open purse when the defendant was taking out her license. *Id.* Once a second officer arrived on scene, the defendant was moved into the second officer's patrol car. *Id.* at ¶ 9-10. However, before being placed in the second officer's car, the officer, a female, conducted a second pat down of the defendant. *Id.* at ¶ 10. During the search, the female officer felt hard plastic in the defendant's groin area, which ended up being a bottle holding crack cocaine, empty gel caps of heroin, and Viagra. *Id.* At this time, the defendant was arrested and subjected to another search by the female officer, during which time a baggie of powdered cocaine was found underneath the defendant's bra. *Id.* at ¶ 10. The defendant filed a motion to suppress, which the trial court granted, finding that the second officer "did not have a reasonable belief that [the] [d]efendant was armed when she conducted the [second] pat-down." *Id.* at ¶ 12. The Second District reversed, finding that the female officer had a reasonable suspicion that the defendant was armed to justify conducting a second pat down. *Id.* at ¶ 15. The court noted that

> [a]lthough [the defendant] had already been frisked for weapons by [the male officer] prior to being placed in his cruiser, a male officer might be more restrained when patting down a female. Despite the fact that [the defendant] was wearing very tight clothing consisting of very short shorts and a short, skimpy top, it was possible for her to conceal a small weapon in her groin and breast areas – areas which a male officer may be reluctant to pat down. In short, we find that [the female officer's] patdown of [the defendant] prior to placing her in her cruiser was lawful.

*Id.* at ¶ 16.

{¶ 30} The present case is similar to *Davis* in that the first pat down of appellant was conducted by an officer of the opposite sex, Trooper Roddy. Both Sergeant Lacy and

Officer Aspacher testified that Trooper Roddy's search of appellant's person was "quick" and did not extend to appellant's crotch area. As Sergeant Lacy explained, there was "absolutely no reason" for Trooper Roddy, a female officer, "to pat a male down [in the crotch area] while there are male officers there." Officer Aspacher, in turn, testified that he had concerns about appellant being able to reach for a weapon and therefore conducted a second pat down of appellant for officer safety. Under these circumstances, we find that the second pat down of appellant was reasonable and did not violate appellant's constitutional rights.

{¶ 31} We further find, contrary to appellant's assertions, that appellant was not under arrest when he was handcuffed and subjected to the pat downs. As we have previously recognized, "[a]n individual may * * * be temporarily restrained either for his own safety or that of the officer." *Popp*, 2011-Ohio-791 at ¶ 20. Placing an individual in handcuffs before conducting a pat down does not automatically convert the investigation into an arrest. *Fairfield v. Adams*, 12th Dist. Butler No. CA95-09-153, 1996 Ohio App. LEXIS 1563, *4-5 (Apr. 22, 1996); *State v. Dunson*, 2d Dist. Montgomery No. 20961, 2006-Ohio-775, ¶ 17. The fact that Officer Aspacher read appellant his *Miranda* rights and asked appellant if he had anything illegal on his person before conducting the second pat down also did not convert the *Terry* investigation into an arrest requiring probable cause.

{¶ 32} Finally, we find that Officer Aspacher's pat down did not exceed the scope of a protective search and that the contraband found in appellant's pants pocket was subject to seizure under the plain-feel doctrine. "Under *Terry* and its progeny, the police may search only for weapons when conducting a pat down of the suspect." *State v. Evans*, 67 Ohio St.3d 405, 414 (1993). "'The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue [the officer's] investigation without fear of violence * * *.'" *Minnesota v. Dickerson*, 508 U.S. 366, 373, 113 S.Ct. 2130 (1993), quoting *Adams v.*

*Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921 (1972). "[O]nce the officer determines from his sense of touch that an object is not a weapon, the pat-down frisk must stop." *Evans* at 414.

{¶ 33} However, "[u]nder the plain feel doctrine, if, during a pat down, the officer feels an object whose contour or mass makes its identity immediately apparent as contraband, the officer may seize the object." *State v. Fisk*, 12th Dist. Preble No. CA2020-11-016, 2021-Ohio- 2989, ¶ 31, citing *Dickerson* at 375-376. The "immediately apparent" requirement is satisfied if the officer has probable cause to associate the object with criminal activity based on the totality of the surrounding circumstances. *State v. Grant*, 12th Dist. Preble No. CA2014-12-014, 2015-Ohio-2464, ¶ 17. The officer may not manipulate the object to determine its incriminating nature. *Id.*; *Bean*, 2016-Ohio-876 at ¶ 18.

{¶ 34} Immediately prior to the second pat down of appellant's person, Officer Aspacher recovered Viagra that appellant advised was in his front right jean pocket. The recovery of the Viagra from this pocket, however, did not foreclose the possibility that appellant may have been armed with a weapon. Officer Aspacher observed a bulge in appellant's right front jean pocket, near the crotch area that Trooper Roddy had not patted down. To ensure his safety, Officer Aspacher ran his flat hand across the bulge. At that time, he heard plastic crinkling. Based on his training and experience with how drugs were packaged, it was immediately apparent to Officer Aspacher that he was feeling methamphetamine, "just based on the size of it and what we were there for." Officer Aspacher denied that he manipulated the object, stating "All I did was touch it. I didn't squeeze it, move it around, roll it, push on it." Under the totality of the circumstances, Officer Aspacher had the right, pursuant to the plain-feel doctrine, to seize the contraband items he felt in appellant's pocket.

{¶ 35} Accordingly, for the reasons stated above, we find that the trial court did not err in denying appellant's motion to suppress. Law enforcement's investigative *Terry* stop

and pat down of appellant did not violate appellant's constitutional rights. Appellant's sole assignment of error is overruled.

{¶ 36} Judgment affirmed.

PIPER, P.J., and S. POWELL, J., concur.