[Cite as *State v. Pullom*, 2025-Ohio-1700.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

  v.

ANDRE M. PULLOM,

    DEFENDANT-APPELLANT.

CASE NO. 13-24-28

OPINION AND
JUDGMENT ENTRY

Appeal from Seneca County Common Pleas Court
Trial Court No. 23 CR 0220

**Judgment Affirmed**

**Date of Decision: May 12, 2025**

APPEARANCES:

    *John C. Filkins, III* for Appellant

    *Stephanie J. Kiser* for Appellee

**MILLER, J.**

{¶1} Defendant-appellant, Andre M. Pullom ("Pullom"), appeals the July 5, 2024 judgment of conviction and sentence of the Seneca County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} On October 23, 2022, Officer Kyle Reinbolt ("Officer Reinbolt") of the City of Fostoria Police Department conducted a traffic stop of Pullom's vehicle on the basis that the vehicle was missing the mirror from the passenger side. Pullom granted officers consent to search the vehicle. When Officer Cole Noftz ("Officer Noftz") conducted a *Terry* pat down of Pullom, he felt what he believed to be narcotics in Pullom's right pocket, and he removed a baggie containing suspected narcotics from the pocket.

{¶3} The Seneca County Grand Jury indicted Pullom on November 16, 2023 on a single count of possession of cocaine in violation of R.C. 2925.11(A), (C)(4)(a), a fifth-degree felony. At his arraignment on December 19, 2023, Pullom entered a not-guilty plea.

{¶4} On February 22, 2024, Pullom filed a motion to suppress evidence challenging the basis of the traffic stop and the removal of the narcotics from his pocket. The State filed its response on March 26, 2024.

{¶5} A hearing on Pullom's motion to suppress was held on May 2, 2024. On May 31, 2024, the trial court filed its judgment entry overruling Pullom's motion to suppress.

{¶6} On July 3, 2024, Pullom withdrew his not-guilty plea and entered a plea of no contest to the count in the indictment. The trial court accepted Pullom's no-contest plea and found him guilty as charged. The parties proceeded directly to sentencing and the trial court sentenced Pullom to five years of community control.

{¶7} Pullom filed a notice of appeal on July 29, 2024. He raises two assignments of error for our review. For ease of discussion, we will address his assignments of error together.

### First Assignment of Error

**The trial court erred when it denied Appellant's motion to suppress evidence for at the time in which the officer pulled over the Appellant's vehicle for a missing passenger side sideview mirror the Appellant's vehicle was equipped with a rearview and driver's side sideview mirror and there was no evidence presented that the Appellant did not have a clear and unobstructed view to the front, both sides, and rear of the vehicle.**

### Second Assignment of Error

**The trial court erred when it denied Appellant's motion to suppress evidence for the officers lacked reasonable and articulable suspicion to detain the Appellant, to conduct a pat down of the Appellant's person, and then exceeded the scope of the pat down by entering the Appellant's pants pocket when no weapons were detected.**

{¶8} In his assignments of error, Pullom challenges the trial court's denial of his motion to suppress. First, Pullom argues that the initial traffic stop constituted an unconstitutional seizure because Officer Reinbolt lacked reasonable, articulable suspicion to initiate a stop of Pullom's vehicle. Second, Pullom alleges that the

search of his person, specifically his pant pocket, was unlawful because it exceeded the scope of the pat down. For the reasons that follow, we disagree.

*Standard of Review*

**{¶9}** "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 2003-Ohio-5372, ¶ 8. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. *Id. See also State v. Carter*, 72 Ohio St.3d 545, 552 (1995). When reviewing a ruling on a motion to suppress, deference is given to the trial court's findings of fact so long as they are supported by competent, credible evidence. *Burnside* at ¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982). With respect to the trial court's conclusions of law, however, our standard of review is de novo; therefore, we must decide whether the facts satisfy the applicable legal standard. *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist. 1997).

*Applicable Law*

**{¶10}** The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." "'The primary purpose of the Fourth Amendment is to impose a standard of reasonableness upon the exercise of discretion by law enforcement officers in order to "safeguard the privacy and security of individuals against arbitrary [governmental] invasions."'" *State v. Kerr*,

2017-Ohio-8516, ¶ 12 (3d Dist.), quoting *State v. Carlson*, 102 Ohio App.3d 585, 592 (9th Dist. 1995), quoting *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391 (1979). "'The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable.'" *Id.*, quoting *Florida v. Jimeno*, 500 U.S. 248, 250, 111 S.Ct. 1801 (1991), citing *Illinois v. Rodriguez*, 497 U.S. 177, 110 S.Ct. 2793 (1990). "Thus, '[t]he touchstone of the Fourth Amendment is reasonableness.'" *Id.*, quoting *Jimeno* at 250.

*Hearing Testimony*

{¶11} At the hearing, Officer Reinbolt testified that on October 23, 2022, he initiated a traffic stop of a "black Chevy 4S" on Potter Street in Fostoria, Seneca County, Ohio. (May 3, 2024 Tr. at 7-8). Officer Reinbolt articulated that the reason he initiated the traffic stop was that the side mirror on the passenger side of the vehicle was missing, which Officer Reinbolt believed to be a violation of Fostoria Code 337.21(A). (*Id.* at 8, 13-15, 24-25). Officer Reinbolt stated that, prior to the stop of Pullom, he was "actively" watching a residence on East High Street and had observed Pullom's vehicle at the address several times. (*Id.* at 25). Officer Reinbolt testified that his observations of Pullom at the residence immediately prior to the traffic stop was "cause for further suspicion during the stop." (*Id.*).

{¶12} Officer Reinbolt recognized Pullom as the driver of the vehicle. (May 3, 2024 Tr. at 9). Officer Reinbolt recalled that after he approached the vehicle, Pullom provided Officer Reinbolt with his driver's license. (*Id.*). While speaking

with Pullom, Officer Reinbolt asked him for consent to search the vehicle. (*Id.* at 9, 18). Pullom consented and began exiting the vehicle. (*Id.* at 9-10).

{¶13} As Officer Reinbolt began searching the vehicle, Officer Noftz removed Pullom from the vehicle and directed him to walk to the back of the vehicle. (*Id.* at 20, 28). Officer Reinbolt testified that he was initially under the mistaken impression that Pullom had consented to a search of his person; however, Pullom "quickly advised" Officer Noftz that he did not consent. (*Id.* at 28, 32).

{¶14} Officer Noftz testified that he conducted a *Terry* pat of Pullom's person to search for weapons. (*Id.* at 28). Officer Noftz recalled starting at the upper part of Pullom's body and then patting around the waist band of his pants and then the right pocket of Pullom's pants. (*Id.*). Officer Noftz stated that as he patted Pullom's right pocket he "immediately" felt what he could identify as a pinch baggy containing a rock-like substance, which Officer Noftz suspected to be narcotics. (*Id.* at 29). Officer Noftz stated that he has training and experience in identifying contraband and he has felt baggies of suspected narcotics before, and he believed the object he felt in Pullom's pocket with his open hand was narcotics. (*Id.* at 29, 37-38). Officer Noftz testified that, based upon this belief, he removed the item from Pullom's pocket. (*Id.* at 29-30). Officer Noftz clarified that, prior to removing the object from Pullom's pocket, he felt the object only with his open hand and specifically denied using his fingers or manipulating the object in any way to make

that determination. (*Id.* at 37-38). Officer Noftz stated that when he felt the object, he "realized right away" that the object was not a weapon. (*Id.* at 37).

{¶15} Officer Reinbolt issued Pullom a citation for the missing passenger-side mirror pursuant to Fostoria Code 337.21(A), and Pullom was released. (May 3, 2024 Tr. at 11, 13-14).

*Traffic Stop: Relevant Law*

{¶16} "Temporary detention of individuals during the stop of an automobile by police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning" of the Fourth Amendment." *Whren v. United States*, 517 U.S. 806, 809-810, 116 S.Ct. 1769 (1996), citing *Prouse* at 653, *United States v. Martinez-Fuerte*, 428 U.S. 543, 556, 96 S.Ct. 3074 (1976), and *United States v. Brignoni-Ponce*, 422 U.S. 873, 878, 95 S.Ct. 2574 (1975). Accordingly, "[a]n automobile stop is . . . subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Id.* at 810. To effect a constitutionally reasonable traffic stop, a law enforcement officer usually must have at least "'a reasonable and articulable suspicion that a motorist has committed, is committing, or is about to commit a crime,' including a traffic violation." *State v. Moiduddin*, 2019-Ohio-3544, ¶ 11 (3d Dist.), quoting *State v. Mays*, 2008-Ohio-4539, ¶ 7.

**{¶17}** "The level of suspicion required to meet the reasonable-suspicion standard 'is obviously less demanding than that for probable cause' and 'is considerably less than proof . . . by a preponderance of the evidence' but is 'something more than an "inchoate and unparticularized suspicion or 'hunch.'"'" *State v. Hawkins*, 2019-Ohio-4210, ¶ 20, quoting *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581 (1989), quoting *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868 (1968). To justify a seizure on the basis of reasonable suspicion, the law enforcement officer involved "'must be able to point to specific and articulable facts which, when taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *State v. Bobo*, 37 Ohio St.3d 177 (1988), quoting *Terry* at 21.

*Analysis: Traffic Stop*

**{¶18}** In his first assignment of error, Pullom argues that the trial court erred by overruling his motion to suppress evidence because Officer Reinbolt lacked reasonable, articulable suspicion that Pullom was in violation of City of Fostoria Codified Ordinance Section 337.21, which states as follows:

337.21 Rear-View Mirror; Clear View to Front, Both Sides and Rear.

(a) Every motor vehicle and motorcycle shall be equipped with a mirror so located as to reflect to the operator a view of the street to the rear of such vehicle or motorcycle. Operators of vehicles and motorcycles shall have a clear and unobstructed view to the front and to both sides of their vehicles or motorcycles and shall have a clear view to the rear of their vehicles or motorcycles by mirror.

(b) Whoever violates this section is guilty of a minor misdemeanor.

**{¶19}** Pullom alleges that the statute does not require a vehicle to have three mirrors to operate legally. Pullom argues that because the vehicle had a rearview mirror and a mirror on the driver's side, his view was not obstructed. Therefore, Pullom reasons that Officer Reinbolt lacked reasonable, articulable suspicion to conduct a traffic stop of his vehicle and, thus, the traffic stop was unconstitutional. We disagree.

**{¶20}** First, after reviewing the statute in concert with the evidence presented at the suppression hearing, we find that the missing passenger-side mirror could raise reasonable, articulable suspicion that Pullom was in violation of the City of Fostoria Codified Ordinance Section 337.21. Although Pullom alleges that the statute does not explicitly require a passenger-side mirror, we find that the lack of a passenger-side mirror could create reasonable, articulable suspicion that the driver lacked "a clear and unobstructed view to the front and to both sides" of the vehicle, as required by the statute.

**{¶21}** Furthermore, "[o]rdinarily a law enforcement officer commits a 'mistake of law' when they reasonably, albeit incorrectly, believe that a statute or ordinance prohibits conduct that is not in fact prohibited." *State v. Mayo*, 2023-Ohio-124, ¶ 26 (3d Dist.), citing *State v. Kirkpatrick*, 2017-Ohio-7629, ¶ 13-14 (1st Dist.). "In such instances, the officer's objectively reasonable mistake of law 'can constitute reasonable suspicion to justify a traffic stop.'" *Id.*, quoting *Kirkpatrick*

at ¶ 6. At the hearing, Officer Reinbolt testified that he understood the statute to require vehicles to be equipped with a passenger-side mirror, and, indeed, Officer Reinbolt issued a citation to Pullom for the missing mirror. Given the totality of the circumstances, even assuming that Officer Reinbolt was mistaken in his belief that the missing passenger side mirror constituted a violation of the statute, this mistake would be an objectively reasonable mistake of law and would not render the initial traffic stop an unconstitutional seizure.

{¶22} Accordingly, Pullom's first assignment of error is overruled.

*Terry Stop & Plain Feel: Relevant Law*

{¶23} The protections of the Fourth Amendment to the United States Constitution extend to brief investigative stops that fall short of traditional arrest. *State v. Hairston*, 2019-Ohio-1622, ¶ 9, citing *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744 (2002). "An officer may perform [a *Terry* stop] when the officer has a reasonable suspicion based on specific and articulable facts that criminal behavior has occurred or is imminent." *Id.* at ¶ 9, citing *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868 (1968). "And when the officer is 'justified in believing' that an individual may be 'armed and presently dangerous,' the officer may conduct a limited protective search of the individual for concealed weapons." *Id.*, citing *Terry* at 24 and *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921 (1972).

{¶24} "'[A] *Terry* search must 'be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for

-10-

the assault of the police officer.'"'" *State v. Barnes*, 2024-Ohio-5865, ¶ 15 (3d Dist.), *State v. Nolen*, 2020-Ohio-118, ¶ 35 (4th Dist.), quoting *Terry* at 29, 88 S.Ct. 1868. "However, if a police officer is conducting a lawful weapons pat down and detects an object that has features making its criminal character 'immediately apparent,' the contraband may be seized without a warrant pursuant to the plain feel doctrine. *Id.* at ¶ 16, quoting *Minnesota v. Dickerson*, 508 U.S. 366, 373, 113 S.Ct. 2130 (1993). "The rationale underlying this doctrine is that the detection of such contraband involved 'no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons. . .'" *Id.*, quoting *Dickerson* at 373. "The 'immediately apparent' requirement is satisfied if the officer has probable cause to associate the object with criminal activity based on the totality of the surrounding circumstances." *State v. Wyatt*, 2021-Ohio-3146, ¶ 33 (12th Dist.), citing *State v. Grant*, 2015-Ohio-2464, ¶ 17 (12th Dist.). "'[I]t need only be probable—that is, more likely than not—that the article possesses that criminal character.'" *State v. Core*, 2023-Ohio-4061, ¶ 31 (2d Dist.), quoting *State v. Dunson*, 2007-Ohio-6681, ¶ 20 (2d Dist.). "The officer may not manipulate the object to determine its incriminating nature." *Wyatt* at ¶ 33.

{¶25} "The determination whether an officer had reasonable suspicion to conduct a *Terry* stop must be based on the totality of circumstances 'viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.'" *Hairston* at ¶ 10, quoting *State v. Andrews*, 57 Ohio St.3d

86, 87-88 (1991). "An assessment of the totality of the circumstances 'does not deal with hard certainties, but with probabilities.'" *Id.*, citing *United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690 (1981). The cumulative facts are considered "'not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.'" *Id.*, quoting *Cortez* at 418.

*Analysis: Terry Stop & Plain Feel*

{¶26} In his second assignment of error, Pullom argues that Officer Noftz erred by conducting the pat down of his person and putting his hand in Pullom's pocket to remove the suspected drugs. Specifically, Pullom argues that because Officer Noftz was aware that the item in his pocket was not a weapon, he exceeded his authority by removing the suspected contraband. We disagree.

{¶27} Under the totality of the circumstances, we do not find that Officer Noftz ran afoul of the Fourth Amendment by conducting a pat down for weapons and for removing the suspected contraband from his pocket. At the time Officer Noftz began conducting the pat down, Pullom had exited his vehicle to allow officers to conduct a consent search of the vehicle. Officer Noftz conceded that he initially was under the mistaken impression that Pullom had consented to a search of his person; however, Pullom informed Officer Noftz that he did not consent to the search of his person. Therefore, Officer Noftz instead conducted a pat down for weapons of Pullom. We find that, under the totality of the circumstances, Officer

Noftz had the authority to conduct a pat down of Pullom to ensure that he was not armed.

**{¶28}** Pullom argues that even if law enforcement had the authority to conduct a pat down to check for the presence of weapons, in light of Officer Noftz's statement that, prior to removing the object from Pullom's pocket, he was aware that the object was not a weapon, law enforcement violated his constitutional rights by nonetheless removing the object from his pocket. However, we find that the removal of the suspected narcotics from Pullom's pocket falls within the exception of the plain-feel doctrine. Notably, when Officer Noftz patted the right pocket of Pullom's pants, he "immediately" felt what he identified as a baggie containing a rock-like substance which Officer Noftz, through his training and experience, believed to be narcotics. Furthermore, Officer Noftz specified that he felt the object with only his open hand and did not manipulate the object or use his fingers in making his determination. Accordingly, we find that Officer Noftz did not conduct an unconstitutional search or seizure by reaching into Pullom's pant pocket and removing the baggie of suspected narcotics. *See Wyatt*, 2021-Ohio-3146, at ¶ 33-34; *State v. Hawkins*, 2023-Ohio-3728, ¶ 26 (2d Dist.).

**{¶29}** Pullom's second assignment of error is overruled.

*Conclusion*

**{¶30}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the Seneca County Court of Common Pleas.

***Judgment Affirmed***

**WALDICK, P.J. and WILLAMOWSKI, J., concur.**

# JUDGMENT ENTRY

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered.  The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket.  See App.R. 30.

Mark C. Miller, Judge

Juergen A. Waldick, Judge

John R. Willamowski, Judge

DATED:
/jlm